## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BILL D. THOMAS, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br><br>v.<br><br>AVIS RENT A CAR SYSTEM, LLC,<br><br>                    Defendant. | Case No. _____<br><br><br>**PLAINTIFF'S CLASS ACTION COMPLAINT & JURY DEMAND** |

Plaintiff Bill D. Thomas, by and through his counsel, brings this Class Action Complaint against Defendant Avis Rent A Car System, LLC, ("Defendant," "Avis" or the "Company"), individually and on behalf of all others similarly situated, and alleges, upon personal knowledge as to himself and counsel's investigations, and upon information and belief as to all other matters, as follows:

## I.  NATURE OF THE ACTION

1.     Plaintiff brings this class action against Defendant for failure to properly or adequately secure and safeguard sensitive information that Plaintiff and others, as current and former customers of Avis, entrusted to it, including, among other things, names, street addresses, email addresses, telephone numbers, Social Security numbers, drivers license numbers, passport numbers (collectively referred to herein as "personally identifiable information" or "PII").

2.     Defendant failed to properly or adequately safeguard or secure this PII in

connection with an incident in which hackers reportedly gained access to Avis internal databases and systems containing the confidential and sensitive PII of hundreds of thousands of its customers during a four-day period from August 3, 2024 to August 6, 2024 (this incident is referred to herein as the "Data Breach" or the "Breach").

3.  Defendant Avis is a well-known rental car company based in the United States with operations world-wide, which describes itself as having "a long history of innovation in the car rental industry and is one of the world's top brands for customer loyalty."[1]  Avis requires its customers to entrust it with this PII, including sensitive, non-public information, in order to rent vehicles obtain other related products and services from Defendant, and without which Defendant could not perform its regular business activities.  Upon information and belief, Avis retains this information for, at least many months If not years, and long after the end of a particular transaction or business relationship with a consumer for which the data at issue was provided.

4.    Plaintiff and other members of the Class (defined below) are current and former customers of Avis.

5.    Plaintiff and Class members provided their PII to Avis with the legitimate and reasonable expectation, and on the mutual understanding, that Avis

---

[1]    Avis  Corporate  Profile  (at  https://www.avis.com/en/about-avis/company-information/corporate-facts ) (last accessed Oct. 1, 2024)

would comply with its obligations to keep that information safe, confidential and secure from unauthorized access.

6.     Avis derives a substantial economic benefit from collecting, retaining and/or storing Plaintiff's and other Class members' PII.  Without this, Avis could not provide the products and services that it needs to provide to customers or remain in business as a rental car company, much less one of the largest and most well-known rental car companies in the United States.

7.     Avis had a duty to adopt reasonable measures to protect the PII of the Plaintiff and other Class members from unauthorized or involuntary disclosure to third parties and to audit, monitor, and verify the integrity of its network and systems, as well as its those of its vendors and affiliates, for their own cybersecurity, to comply with its legal duties to keep consumers' PII safe, secure and confidential.

8.     By obtaining, collecting, using, and deriving a benefit from Plaintiff's and other Class members' PII, Avis assumed legal and equitable duties to ensure the protection and continued confidentiality of that PII, and Avis knew or should have known that it was thus responsible for protecting Plaintiff's and other Class members' PII from improper or unauthorized disclosure.

9.     In this situation, however, Avis failed to protect or safeguard adequately if at all) the PII of Plaintiff and other Class members.  Upon information and belief, Avis failed to even encrypt or redact this information, including, among other things,

the highly sensitive PII of Class members with which Avis was entrusted and committed to keep safe, secure and confidential. Among other things, Avis disregarded numerous fundamental mandatory data encryption protocols, policies, and procedures, resulting in a massive and extremely harmful, but unnecessary and avoidable, compromise of Avis's consumer PII through disclosure to one or more unauthorized third parties.

10.   According to news reports and correspondence from Avis, it discovered the existence of the cyberattack behind the Breach on August 5, 2024. An investigation revealed that the hackers had access to Avis systems from August 3 to August 6, 2024, and by August 14 Avis had determined that the compromised data included names and other items of sensitive personal information.

11.   Avis failed to disclose the Breach to the public or the consumers whose PII had been compromised until on or about September 4, 2024 when it began sending notice letters to Class members and also filing examples of those letters and/or information reports about the Breach with several state attorneys general.

12.   Avis' notifications to state regulators disclosed that the Breach affected the PII of a total of 299,006 persons.

13.   Hackers targeted Avis and obtained Plaintiff's and other Class members' PII because of the high value of that information in exploiting and stealing the their identities. The present and continuing risk of identity theft and fraud to

victims of this Data Breach will remain for their respective lifetimes.

14.    Upon information and belief, Plaintiff's and Class members' PII has been exposed and exfiltrated as a result of this Data Breach. Noticeably absent from Defendant's Notice letters is any real discussion of the specifics or the root cause of the Data Breach, the precise vulnerabilities in Avis systems and networks that were exploited, and the remedial measures that were or are being undertaken to ensure such a Breach does not happen again. To date, these critical facts have not been explained or clarified to Plaintiff or other Class members, who have a vested interest in this information and in ensuring that their PII remains secure and protected going forward.

15.    Plaintiff brings this action on behalf of a Class of all persons whose PII was compromised as a result of Avis's failure to:

   a. Adequately safeguard, secure and protect Plaintiff's and other Class members' PII;

   b. Provide timely or sufficient notice or warning of the Breach or of Avis' inadequate data security protocols, practices, procedures and infrastructure, to Plaintiff and other Class members; or

   c. Effectively secure, implement and/or operate hardware and technology protections for Class members' PII, or do so using adequate and effective security procedures reasonably resistant to and free of vulnerability to and incidents of breach or compromise.

16.    Avis has acted at least recklessly and/or negligently and in violation of federal and state law in not adequately and properly protecting and safeguarding

Class members' PII, and also in failing to give Class members timely, adequate notice of the Breach.

17.    Avis has demonstrated, among other things, fundamental disregard of the rights of Plaintiff and other Class members, and its conduct in this matter demonstrates intentional, willful, reckless, or negligent failure to adopt, implement and/or maintain a reasonable or sufficient framework or set of procedures or safeguards to ensure that the PII of its customers, including Plaintiff and other Class members, were shielded from attack and unauthorized disclosure and/or theft.

18.    The Plaintiff and other members of the Class have a continuing interest in ensuring that their PII, to the extent that it remains in the possession, custody and/or control of Defendant, is safe and secure and remains that way going forward on a continuing and uninterrupted basis.  Accordingly, they are entitled to and should be granted injunctive and other equitable relief.

19.    Plaintiff and other Class members have suffered and continue to suffer material injuries as a result of Defendant's misconduct and/or omissions, including, at a minimum:

    (a)    invasion of privacy;

    (b)    unauthorized disclosure and/or theft of their PII;

    (c)    lost or diminished value of PII;

    (d)    lost time and opportunity costs associated with attempting to mitigate the potential and/or actual consequences of the Data Breach;

(e)    loss of benefit of the bargain;

(f)    actual misuse of the compromised data consisting of an increase in spam calls and/or emails or other such communications;

(g)    Plaintiff's PII being disseminated and sold or bartered on the dark web, according to Experian and Discover;

(h)    nominal damages; and

(i)    the continued and certainly increased risk to their PII, which: **(a)** remains unencrypted and available for unauthorized third parties to access and abuse; and **(b)** remains backed up in Defendant's possession and is subject to further theft and unauthorized disclosure so long as Defendant fails to undertake appropriate and adequate measures to safeguard and protect it.

20.    Plaintiff seeks to remedy these harms and prevent any future data compromise on behalf of himself and all similarly situated persons whose personal data was compromised and stolen as a result of the Data Breach, and who remain at risk as a result, due to Defendant's inadequate data security policies, practices, procedures and protocols and/or improper and inadequate hardware and software technology safeguards and protections.

## II. <u>PARTIES</u>

21.    Plaintiff Bill D. Thomas is a citizen of the United States and the State of Oklahoma, and resides in Oklahoma City, Oklahoma. Plaintiff is a long-time, repeat customer of Avis, and recently received a Notice letter dated September 4, 2024 from Avis notifying him of the Data Breach.

22.    Defendant Avis Rent A Car System, LLC, a limited liability company incorporated in Delaware and headquartered in Parsippany, New Jersey, and has over 5,000 locations in over 165 countries.  Avis reportedly generates approximately $9.2 billion in annual revenue.  Defendant is a subsidiary of Avis Budget Group, Inc. (NASDAQ: CAR), also headquartered in Parsippany, New Jersey, which describes itself as "a leading global provider of mobility solutions, both through its Avis and Budget brands, which have more than 11,000 rental locations in approximately 180 countries around the world, and through its Zipcar brand, which is the world's leading car sharing network, with more than one million members."

### III.  JURISDICTION AND VENUE

23.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).  The amount in controversy here exceeds $5 million, exclusive of interest and costs. The number of class members is over 100, many of whom (including Plaintiff) reside outside the State of New Jersey, and thus have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. §1332(d)(2)(A).

24.    This Court has personal jurisdiction over the Defendant, because Avis' principal place of business is in this District, Avis regularly conducts business in this District, and the acts and omissions giving rise to Plaintiff's claims against Avis occurred in and emanated from this District.

25.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because, among other things, a substantial part of the events giving rise to this action occurred in this District, Defendant has harmed Class Members residing in this District, and Defendant has principal places of business in this District.

## IV. <u>FACTUAL ALLEGATIONS</u>

### *<u>The Data Breach</u>*

26.    As outlined above, Avis disclosed earlier this month that it had learned on August 5, 2024 hackers reportedly had access to its internal databases and systems containing the confidential and sensitive PII of nearly 300,000 of its customers.  This attack (the Data Breach) reportedly lasted for four days in August (August 3, 2024 to August 6, 2024), and even continued for a day after Avis reportedly discovered on August 5 that it was taking place.

27.    By August 14, Avis had reportedly determined that the compromised PII included names and other items of sensitive, valuable and confidential personal information about hundreds of thousands of Avis customers involved, including their names, street addresses, email addresses, telephone numbers, Social Security numbers, drivers license numbers, and/or passport numbers.

28.    Avis did not begin to disclose information about the Data Breach to the public or to consumers whose PII had been compromised until on or about September 4, 2024, when it began sending notice letters to Class members and also

filing examples of those letters and/or other information about the Breach with state regulators, including in Iowa, California, Maine, Texas, Massachusetts, Vermont, Oregon, among others.

29.    Noticeably absent from the Avis Notice letters sent to customers on September 4, 2024 is any detailed discussion of the specifics or the root cause of the Data Breach, the precise vulnerabilities in Avis systems and networks that were exploited, or the remedial measures that were or are being undertaken to ensure a repeat of the Breach did not occur.    Only snippets of vague and incomplete information were revealed by these Notice letters or by Avis' notifications to certain state attorneys general.

30.    For example, the notifications to certain state attorneys general disclosed that the Breach affected the PII of a total of nearly 300,000 Avis customers. Furthermore, Avis' notification to the Attorney General of Maine described the Breach as an "Insider wrongdoing" but provided no other information or specifics at all about this aspect of the Breach.[2]    This appears potentially inconsistent with Avis'

---

[2]  Avis Data Breach Notification to the Office of the Maine Attorney General, https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/ccfece24-0b9c-4251-a89b-0fd68ecbda12.html (last accessed Oct. 1, 2024). *See also "**Avis alerts nearly 300K car renters that crooks stole their info**" ; 'Insider wrongdoing' to blame for security breach*, Jessica Lyons, The Register, Sept. 9, 2024 (at https://www.theregister.com/2024/09/09/avis_data_breach_car_rental/ ) ("Avis also cites 'insider wrongdoing' under the security breach disclosure section in the Maine filing, but doesn't provide additional details about what happened.") (last accessed Oct. 1, 2024).

September 4, 2024 Notices, which state that "an unauthorized third party gained access to one of our business applications," and/or other reports that "hackers" were behind the Breach.

31.    Omitted from the Notice letters were critical details such as the identity of the cybercriminals ("insider" or otherwise) who perpetrated the Data Breach, the details or specifics of the root cause of the Data Breach, the vulnerabilities exploited or the "business application" improperly accessed, or the remedial measures undertaken to ensure such a breach does not occur again. To date, these critical facts have not been explained or clarified to Plaintiff and Class members, who retain a vested interest in ensuring that their PII remains protected.

32.    Avis admits that it waited weeks after identifying the potential victims of the Breach (i.e., Plaintiff and other Class members), to begin to notify them or state regulators of the Breach.

33.    According to the Notices, Avis

> discovered on August 5, 2024, that an unauthorized third party gained access to one of our business applications. After becoming aware of the incident, we immediately took steps to end the unauthorized access, began an investigation with assistance from cybersecurity experts, and alerted the relevant authorities. Based on our investigation, we determined that the unauthorized access occurred between August 3, 2024, and August 6, 2024.
>
> **What personal information was involved?**

We determined on August 14, 2024, that your personal information was obtained by the unauthorized third party, which included your name and your *[data elements]*.

**What we are doing:**

Since the incident occurred, we have worked with cybersecurity experts to develop a plan to enhance security protections for the impacted business application. In addition, we have taken steps to deploy and implement additional safe and are actively reviewing our security monitoring and controls to enhance and fortify the same.

34.     Avis' September 4, 2024 Notice letters then launch into a section on "**What you can do**" which is actually longer and more detailed than the discussion in the Notice letter concerning the Breach itself, the deficiencies which resulted in the Breach, or actions being taken by Avis to alleviate the breach.[3]   Avis has therefore tried to shift the onus onto Plaintiff and other Class members to undertake and expend substantial effort, time and resources to provide the basic protections and safeguards that Avis failed to provide for their valuable and sensitive PII, and to shield themselves from the consequences of Avis' egregious failures in that regard.

35.     Avis had obligations to Plaintiff and to Class Members to safeguard their PII and protect it from unauthorized access and disclosure, including by ensuring that Avis' vendors would protect that PII. Plaintiff and Class Members

---

[3] *See, e.g.*, Sept 5, 2024 Notice of Data Security Incident – Avis Rent A Car System, LLC ("Avis") to the Iowa Attorney General (at https://www.iowaattorneygeneral.gov/media/cms/952024_Avis_Rent_A_Car_System_LLC_A7F18A36DEE2B.pdf ) (last accessed Oct. 1, 2024)

provided their PII to Avis with the reasonable expectation and mutual understanding that Avis, and anyone Avis contracted with, would comply with their obligations to keep such information confidential and secure from unauthorized access.

36.    Avis' data security obligations were particularly important, and Avis is or should be acutely aware of and understand the importance of keeping customer's PII safe, and is or should be acutely if not uniquely aware of the given the substantial increase in cyberattacks and/or data breaches of major companies before the Data Breach.

37.    Defendant knew or should have known that these attacks were common and foreseeable, given the rapid increase in such incidents just over the last several years.  For example, the number of data breaches in the U.S. has significantly increased, from a mere 447 in 2012 to more than 3,200 in 2023.[4]

38.    Due to Defendant's inadequate and insufficient data security measures, Plaintiff and other Class members now face a substantially increased risk of fraud and identity theft and must essentially live with that threat for the foreseeable future, if not forever. For example, Plaintiff has reported experiencing an increase of spam emails in recent months. PII stolen in incidents such as this Data Breach that comes in the hands of cybercriminals to be sold on the Dark Web has a heightened

---

[4] https://www.statista.com/statistics/273550/data-breaches-recorded-in-the-united-states-by-number-of-breaches-and-records-exposed/ (last accessed October 3, 2024).

likelihood of being misused for sinister purposes. This is a common modus operandi of cybercriminals who perpetrate cyberattacks of the type that occurred here.

39.     By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class members' PII, Defendant assumed legal and equitable duties, and knew, or should have known, that it was responsible for protecting Plaintiff's and Class members' PII from unauthorized disclosure.

40.     Defendant had, and continues to have, obligations created by contract, industry standards, federal law, common law, and representations made to Plaintiff and other Class members, to keep their valuable PII confidential and to protect it from unauthorized access and disclosure.

41.     Plaintiff and Class members have taken reasonable steps to maintain the confidentiality and security of their PII.

42.     Plaintiff and Class members provided their PII to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access and disclosure.

### *FTC Security Guidelines Concerning PII*

43.     The Federal Trade Commission ("FTC") has established security guidelines and recommendations to help entities protect PII and reduce the likelihood of data breaches. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair

practices in or affecting commerce," including, as interpreted by the FTC, failing to use reasonable measures to protect PII by companies like Defendant. Several publications by the FTC outline the importance of implementing reasonable security systems to protect data. The FTC has made clear that protecting sensitive customer data should factor into virtually all business decisions.

44.    In 2016, the FTC provided updated security guidelines in a publication titled Protecting Personal Information: A Guide for Business. Under these guidelines, companies should protect consumer information they keep; limit the sensitive consumer information they keep; encrypt sensitive information sent to third parties or stored on computer networks; identify and understand network vulnerabilities; regularly run up-to-date anti-malware programs; and pay particular attention to the security of web applications (the software used to inform visitors to a company's website and to retrieve information from the visitors).

45.    The FTC recommends that businesses do not maintain payment card information beyond the time needed to process a transaction; restrict employee access to sensitive customer information; require strong passwords be used by employees with access to sensitive customer information; apply security measures that have proven successful in the industry; and verify that third parties with access to sensitive information use reasonable security measures.

46.    The FTC also recommends that companies use an intrusion detection

system to immediately expose a data breach; monitor incoming traffic for suspicious activity that indicates a hacker is trying to penetrate the system; monitor for the transmission of large amounts of data from the system; and develop a plan to respond effectively to a data breach in the event one occurs.

47.    The FTC has brought several actions to enforce Section 5 of the FTC Act. According to the FTC's website, the FTC can and does take law enforcement action to make sure that companies live up to their promises to consumers to safeguard their personal information. The FTC has brought legal actions against organizations that have violated consumers' privacy rights or misled them by failing to maintain security for sensitive consumer information or caused substantial consumer injury.

48.    In many of these cases, the FTC has charged defendant with violating FTC Act Section 5, which bars unfair and deceptive acts and practices in or affecting commerce. In addition to the FTC Act, the agency also enforces other federal laws relating to consumers' privacy and security.[16]

49.    Defendant was aware or should have been aware of its obligations to protect clients' customers' PII and privacy before and during the Data Breach yet failed to take reasonable steps to protect customers from unauthorized access. Among other violations, Defendant violated its obligations under Section 5 of the FTC Act.

### *Defendant Did Not Use Reasonable Security Procedures*

50.   Despite this knowledge, Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive, non-encrypted, and non-redacted information it was maintaining for Plaintiff and Class members, causing Plaintiff and Class members' PII to be exposed and exfiltrated by cyber criminals.

51.   To prevent and detect cyber-attacks, Avis could and should have implemented, as recommended by the U. S. Government, the following measures:

☐   Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

☐   Configure firewalls to block access to known malicious IP addresses.

☐   Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

☐   Set anti-virus and anti-malware programs to conduct regular scans automatically.

☐   Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

☐   Configure access controls—including file, directory and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have written access to those files, directories, or shares.

☐   Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full Office Suite applications.

☐   Implement Software Restriction Policies (SRP) or other

controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

☐ Consider disabling the Remote Desktop Protocol (RDP) if it is not being used.

☐ Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

☐ Execute operating system environments or specific programs in a virtualized environment.

☐ Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.

52.     To prevent and detect cyber-attacks, Defendant could and should have implemented, as recommended by the U.S. Cybersecurity & Infrastructure Security Agency, the following measures:

☐ Update and patch your computer. Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks.

☐ Use and maintain preventative software programs. Install antivirus software, firewalls, and email filters and keep them updated to reduce malicious network traffic.[5]

53.     To prevent and detect cyber-attacks, Defendant could and should have implemented, as recommended by the Microsoft Threat Protection

---

[5] *See* Cybersecurity & Infrastructure Security Agency, *Protecting Against Ransomware* (orig. Rel. date Apr. 11, 2019), at: https://www.cisa.gov/news-events/news/protecting-against-ransomware (last accessed Sept. 24, 2024).

Intelligence Team, the following measures:

### Secure internet-facing assets

- ☐ Apply the latest security updates
- ☐ Use threat and vulnerability management
- ☐ Perform regular audit
- ☐ Remove privileged credentials
- ☐ Thoroughly investigate and remediate alerts
- ☐ Prioritize and treat commodity malware infections as potential full compromise.
- ☐ Include IT Pros in security discussions
- ☐ Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely.

### Build credential hygiene

- ☐ Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords.

### Apply principle of least-privilege

- ☐ Monitor for adversarial activities
- ☐ Hunt for brute force attempts
- ☐ Monitor for cleanup of Event Logs
- ☐ Analyze logon events

### Harden infrastructure

- ☐ Use Windows Defender Firewall
- ☐ Enable tamper protection
- ☐ Enable cloud-delivered protection
- ☐ Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[6]

---

[6] *See Human-operated ransomware attacks: A preventable disaster* (Mar 5, 2020), *at:* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/ (last accessed Sept. 24, 2024).

54.    Given that Defendant was storing the PII of Plaintiff and Class members, Defendant could and should have implemented all the above measures to prevent and detect cyber-attacks.

55.    The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent "hacking" attacks, resulting in the Data Breach and the exposure of the PII of an undisclosed amount of current and former consumers, including Plaintiff and the other Class members.

***Securing PII and Preventing Breaches***

56.    Defendant breached its obligations to Plaintiff and the other Class members and/or were otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data. Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

> A.    Failing to maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;
>
> A.    Failing to adequately protect customers' PII;
>
> B.    Failing to properly monitor its own data security systems for existing intrusions;
>
> C.    Failing to ensure that it, and its vendors with access to its computer systems and data, employed reasonable security procedures; and
>
> D.    Failing to adhere to industry standards for cybersecurity.

57.    Defendant could have prevented this Data Breach by properly securing and encrypting the PII of Plaintiff and Class members. Alternatively, Defendant could have destroyed the data that was no longer useful, especially outdated data.

58.    Defendant's negligence in safeguarding the PII of Plaintiff and other Class members was exacerbated by the repeated warnings and alerts directed to businesses to protect and secure sensitive data. Despite the prevalence of public announcements of data breaches and data security compromises, Defendant failed to take appropriate steps to protect the PII of Plaintiff and Class members from being compromised.

### *Defendant Failed to Comply with Industry Standards*

59.    Several best practices have been identified that, at a minimum, should be implemented by companies like Defendant, including but not limited to, educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data; and limiting which employees can access sensitive data. Defendant failed to follow these industry best practices.

60.    Other best cybersecurity practices include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such

as firewalls, switches, and routers; monitoring and protecting physical security systems; protecting against any possible communication system; training staff regarding critical points. Defendant failed to follow these cybersecurity best practices, including failure to train staff.

**_Value of Personally Identifiable Information_**

61.    The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web.  Numerous sources cite dark web pricing for stolen identity credentials. For example, PII can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[19] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[20] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[21]

62.    Social Security numbers, for example, are among the worst kind of PII to  have been stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change.  The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for

credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[7]

63.    Moreover, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

64.    Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[8]

65.    Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card

---

[7] Social Security Administration, *Identity Theft and Your Social Security Number*, *at* https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited Sept. 24, 2024).

[8] *See* Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), *at*: http://www.npr.org/2015/02/09/384875839/data-stolen-by- anthem-s-hackers-has-millions-worrying-about-identity-theft (last accessed Sept. 24, 2024).

information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change, where it includes names and Social Security numbers.

66.    This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained: "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x in price on the black market."[9] Among other forms of fraud, identity thieves may use Social Security numbers to obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

67.    Moreover, the fraudulent activity resulting from the Data Breach may not come to light for years. There may be a time lag between when harm occurs versus when it is discovered, and between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches, "law enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to

---

[9] *See* Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card\ Numbers*, IT World, Feb. 6, 2015,    *at* https://www.networkworld.com/article/935334/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last accessed Sept. 24, 2024).

commit identity theft" and that "[f]urther, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm."[10]

70.    The PII stolen in the Data Breach has significant value, as PII is a valuable property right.[11]    Sensitive PII can sell for as much as $363 per record, according to the Infosec Institute.[12]

71.    There is also an active, robust, and legitimate marketplace for PII.    In 2019, the data brokering industry was worth roughly $200 billion.[13] In fact, the data marketplace is so sophisticated that consumers can sell their non-public information directly to a data broker, who in turn aggregates the information and provides it to marketers or app developers.[14] Consumers who agree to provide their

---

[10] *See Report to Congressional Requesters*, GAO, at 29 (June 2007), *at:* https://www.gao.gov/assets/gao-07-737.pdf (last accessed Sept. 24, 2024).

[11] *See, e.g.*, John T. Soma, et al, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 RICH. J.L. & TECH. 11, at *3–4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets." (citations omitted)).

[12] *See* Ashiq Ja, *Hackers Selling Healthcare Data in the Black Market*, INFOSEC (July 27, 2015), *at* https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/ (last accessed Sept. 24, 2024).

[13] *See* David Lazarus, *Shadowy Data Brokers Make the Most of Their Invisibility Cloak* (Nov. 5, 2019), *at* https://www.latimes.com/business/story/2019-11-05/column-data-brokers (last accessed Sept. 24, 2024).

[14] *See, e.g.*, https://datacoup.com/; *see also* https://worlddataexchange.com/about (last accessed Sept. 24, 2024).

web browsing history to the Nielsen Corporation can receive up to $60.00 a year.[15]

72. As a result of the Data Breach at issue here, Plaintiff's and other Class members' PII, which has an inherent market value in both legitimate and black markets, has been damaged and diminished by its unauthorized release to third-party actors, to whom it holds significant value. However, this transfer of value occurred without any consideration paid to Plaintiff or other Class members for their valuable property, resulting in an economic loss. Moreover, the PII is now readily available, and the rarity of Plaintiff's and Class members' PII has been lost, thereby causing additional loss of value.

73.    At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the PII of Plaintiff and other Class members, including but not limited to name, their names and Social Security numbers, and of the foreseeable consequences that would occur if Defendant's data security systems and networks were breached, including, specifically, the significant costs that would be imposed on Plaintiff and other Class members as a result of a breach and the costs associated with being denied access to their money and financial accounts.

74.    Plaintiff and other Class members now face the real threat of years of

---

[15] *See* Computer & Mobile Panel, NIELSEN, *at* https://computermobilepanel. nielsen.com/ui/US/en/sdp/landing (last accessed Sept. 24, 2024).

constant surveillance of their financial and personal records, monitoring, and loss of rights. For one thing, Plaintiff experienced a noticeable uptick in spam emails in recent months. Beyond the significant stress and anxiety the situation has caused, Plaintiff and other Class members have already devoted, and anticipated continuing to devote, countless hours to the vigilant monitoring of their identity and financial accounts to mitigate any potential harm. In sum, the Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

75.    Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Avis' server(s) and computer network, amounting to potentially tens of thousands of individuals' detailed PII, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

76.    The injuries to Plaintiff and other Class members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the PII of Class members, including, but not limited to, failing to encrypt sensitive PII, failing to redact sensitive PII, keeping unencrypted and unredacted sensitive PII in internet facing environments, and failing to delete sensitive PII that Defendant had no reasonable business purpose for continuing to maintain.

77.    The ramifications of Defendant's failure to safeguard the PII of

Plaintiff and other Class members are long-lasting and severe. Once PII is stolen, fraudulent use of that information and damage to victims may continue for years.

78.     As a vendor and provider of consumer services and goods, and one of the largest and most well-known vehicle rental companies in the United States, if not the world, in possession of current and former customers PII, Defendant Avis knew, or should have known, the importance of safeguarding the PII entrusted to it by the Plaintiff and other Class members and of the foreseeable consequences if its data security systems (or that of its outside vendors or other contractors) were breached. This includes the significant costs imposed on Plaintiff and other Class members as a result of a breach. Nevertheless, Defendant failed to take adequate cybersecurity measures to prevent the instant Data Breach and the resulting harm .

## V. <u>PLAINTIFF THOMAS' SPECIFIC ALLEGATIONS</u>

79.     Plaintiff Thomas is a long-time, repeat customer of Avis who resides in Oklahoma.  In early September, Plaintiff received a Notice letter dated September 4, 2024 from Avis notifying him of the Data Breach.  The Notice to Mr. Thomas stated that his specific PII which had been compromised was his name, driver's license, and dates of birth

80.     Plaintiff Thomas provided his PII, at Avis's request, when he opened an account with and purchased goods and/or services from Defendant Avis.For example, the notifications to certain state attorneys general disclosed that the Breach

affected the PII of a total of nearly 300,000 Avis customers

81.    Plaintiff is very careful about sharing his sensitive PII, and has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source.

82.    As a result of the Breach, Plaintiff made reasonable efforts to mitigate the impact of the Breach after receiving the Data Breach Notice, including but not limited to taking reasonable steps to research the facts and information Breach, reviewing credit reports, and financial account statements for any indications of actual or attempted identity theft or fraud.

83.    Plaintiff Thomas has spent multiple hours, and will continue to spend valuable time for the remainder of his life, that he otherwise would have spent on other activities, including but not limited to work and/or recreation.

84.    As a result of the Data Breach, Plaintiff has also suffered emotional distress as a result of the unauthorized and improper access and release of his PII, which he believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and/or using his PII for purposes of identity theft and/or fraud. Plaintiff is very concerned about identity theft and fraud, as well as the consequences thereof.

85.    As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harm

caused by the Data Breach. In addition, Plaintiff will continue to be at present, imminent, and continued increased risk of identity theft and/or fraud for the remainder of his lifetime.

### *Plaintiff's Injuries and Damages*

86.    As a direct and proximate result of Defendant's conduct, the Plaintiff and other Class members are presently experiencing and will continue experiencing actual harm from fraud and identity theft.

87.    Plaintiff and other Class members are presently experiencing substantial risk of out-of-pocket fraud losses, such as loans opened in their names, tax return fraud, utility and medical bills opened in their names, and similar types of identity theft.

88.    Plaintiff and other Class members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their PII as potential fraudsters could use that information to target such schemes more effectively to Plaintiff and other Class members.

89.    Plaintiff and other Class members are also incurring and may continue incurring out- of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

90.    Plaintiff and other Class members also suffered a loss of value of their

PII when it was acquired by the cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases.

91.    Plaintiff and o t h e r Class members were also damaged via benefit-of-the-bargain damages. Plaintiff and Class members overpaid for a service than they otherwise would have, in exchange for which Defendant was supposed to provide adequate data security but was not. Part of the price Plaintiff and Class members paid to Defendant and its affiliates was intended to be used by Defendant to fund adequate security of Defendant's computer property and protect Plaintiff's and Class members' PII.  Thus, Plaintiff and Class members did not get what they paid for.

92.    Plaintiff and other Class members have spent and will continue to spend significant amounts of time monitoring their financial accounts and records for fraud and misuse.

93.    Plaintiff and other Class members have suffered actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of unauthorized credit card transactions, lost use of financial instruments, out-of-pocket expenses, and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

       a.    Finding fraudulent loans, insurance claims, tax returns, and/or government benefit claims;

       b.    Purchasing credit monitoring and identity theft

prevention;

    c.    Placing "freezes" and "alerts" with credit reporting agencies;

    d.    Spending time on the phone with or at financial institutions or government agencies to dispute fraudulent charges and/or claims;

    e.    Contacting financial institutions and closing or modifying financial accounts; and/or

    f.    Closely reviewing and monitoring medical insurance accounts, bank accounts, payment card statements, and credit reports for unauthorized activity for years to come.

94.    Moreover, Plaintiff and other Class members have an interest in ensuring that their PII, which is believed to remain in the possession of Defendant, is protected from further breaches by the implementation of security measures and safeguards, including but not limited to, making sure that the storage of data or documents containing sensitive and confidential personal, and/or financial information is not accessible online, that access to such data is password-protected, and that such data is properly encrypted.

95.    Further, as a result of Defendant's conduct, Plaintiff and other Class members are forced to live with the anxiety that their PII may be disclosed to the entire world, thereby subjecting them to embarrassment and depriving them of any right to privacy whatsoever.

96.    As a direct and proximate result of Defendant's actions and inactions, Plaintiff and other Class members have suffered a loss of privacy and are at a

substantial and present risk of harm.

## VI. <u>CLASS ACTION ALLEGATIONS</u>

97.    Plaintiff brings this action individually and on behalf of all other persons similarly situated, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3). Specifically, Plaintiff proposes the following Class, subject to amendment as appropriate:

> **All individuals in the United States whose PII was impacted as a result of the Data Breach (the "Class") as defined herein.**

98.    Excluded from the Class are the following individuals and/or entities: Defendant or any of Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant or any of its parents, subsidiaries, affiliates, officers or directors have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judicial officers assigned to hear any aspect of this litigation, as well as their immediate family members.

99.    Plaintiff reserves the right to modify or amend the definition of the proposed Class, as well as add subclasses, before the Court determines whether certification is appropriate.

100.    The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3):

    a.    **<u>Numerosity</u>**. The Class members are so numerous that

joinder of all members is impracticable. Although the precise number of Class members is unknown to Plaintiff, reports are that nearly 300,000 individuals' PII was impacted in the Data Beach. Thus, numerosity is met.

b.    **<u>Commonality</u>**. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class members. These common questions include, without limitation:

i.    Whether Defendant engaged in the conduct alleged herein;

ii.    Whether Defendant's conduct violated the FTCA;

iii.    When Defendant learned of the Data Breach;

iv.    Whether Defendant's responses to the Data Breach was adequate;

v.    Whether Defendant unlawfully lost or disclosed Plaintiff's and Class members' PII;

vi.    Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the PII compromised in the Data Breach;

vii.    Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

viii.    Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

ix.    Whether Defendant owed duties to Plaintiff and other Class members to safeguard their PII;

x.    Whether Defendant breached its duties to Plaintiff and other Class members to safeguard their PII;

xi.    Whether hackers obtained Plaintiff's and other Class members' PII via the Data Breach;

xii.    Whether Defendant had legal duties to provide timely and accurate notice of the Data Breach to Plaintiff and other Class members;

xiii.    Whether Defendant breached its duties to provide timely and accurate notice of the Data Breach to Plaintiff and Class members;

xiv.    Whether Defendant knew or should have known that the data security systems and monitoring processes of it and/or its vendors were deficient;

xv.    What damages Plaintiff and other Class members suffered as a result of Defendant's misconduct;

xvi.    Whether Defendant's conduct was negligent;

xvii.    Whether Defendant's unjustly enriched;

xviii.    Whether Plaintiff and Class members are entitled to actual and/or statutory damages;

xix.    Whether Plaintiff and Class members are entitled to additional credit or identity monitoring and monetary relief; and

xx.    Whether Plaintiff and Class members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

c.    **Typicality**. Plaintiff's claims are typical of those of other Class members because Plaintiff's PII, like that of every other Class member,

was compromised in the Data Breach.  Plaintiff's claims are typical of those of the other Class members because, *inter alia*, all Class  members  were injured  through  the  common  misconduct  of  Defendant. Plaintiff  is advancing the same claims and legal theories on behalf of himself and all other Class members, and there are no defenses that are unique to Plaintiff.  The claims of Plaintiff and those of Class members arise from the same operative facts and are based on the same legal theories.

d.        **Adequacy of Representation**.  Plaintiff will  fairly  and adequately represent and protect the interests of Class members.  Plaintiff's counsel  is  competent  and  experienced  in litigating class actions, including data privacy litigation of this kind.

e.        **Predominance**. Defendant has engaged in a common course of conduct toward Plaintiff and Class members in that all of Plaintiff's and Class members' data was stored on its computer systems and unlawfully accessed and exfiltrated in the same way.  The common issues arising from Defendant's conduct  affecting  Class  members  set  out  above  predominate  over  any individualized issues.  Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

f.        **Superiority**.  A class action is superior to other available methods for the fair and  efficient  adjudication of this controversy and  no unusual  difficulties  are  likely  to  be encountered in the management of this class action. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most  Class  members  would  likely  find  that  the  cost  of  litigating  their individual claims  is prohibitively high and would therefore have no effective remedy.  The  prosecution  of  separate  actions  by  individual  Class  members would create a risk of inconsistent or varying adjudications with  respect  to

individual Class members, which would establish incompatible standards of conduct for Defendant. In contrast, conducting this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

101. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2). Defendant has acted and/or refused to act on grounds generally applicable to the Class such that final injunctive relief and/or corresponding declaratory relief is appropriate as to the Class as a whole. Finally, all members of the proposed Class are readily ascertainable. Defendant has access to the names and addresses and/or email addresses of Class members affected by the Data Breach. Class members have already been preliminarily identified and sent notice of the Data Breach by Avis.

## VII. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Negligence**
**(On Behalf of Plaintiff and the Class)**

102. Plaintiff incorporates by reference all previous allegations as though fully set forth herein.

103. Defendant knowingly collected, came into possession of, and maintained and stored Plaintiff's and Class members' PII, and had duties to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

104. Defendant had and still has duties under common law to have

procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiff's and Class members' PII.

105.    Defendant had and continues to have duties to employ reasonable security measures under Section 5 of the FTC Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

106.    Defendant's duties to use reasonable security measures required it to take reasonable and adequate measures to protect the security, confidentiality, and integrity of customer information by developing a comprehensive written information security program that contains reasonable administrative, technical, and physical safeguards.

107.    Defendant had full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and other Class members could and would suffer if the data were wrongfully disclosed.

108.    By assuming responsibility for collecting and storing this data, and in fact doing so and using it for commercial gain, Defendant had duties of care to use reasonable means to secure and safeguard Avis' computer property—and Class members' PII held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duties include, but are not

limited to, a responsibility to redact and encrypt sensitive information, promptly remove sensitive information that's no longer needed, implement processes by which it could detect a breach of its security systems in a reasonably expeditious time period, and to give prompt notice to those affected in the case of a data breach.

109.    Defendant was and is subject to "independent duties," untethered to any contract between Defendant and Plaintiff or other Class members.

110.    This breach of security, unauthorized access, and resulting injury to Plaintiff's and other Class members' PII was reasonably foreseeable in light of the significant increase in cyberattacks and/or data breaches of major companies before the Data Breach.[16]

111.    A breach of security, unauthorized access, and resulting injury to Plaintiff's and Class members' PII was also reasonably foreseeable particularly considering Defendant's inadequate security practices, which include sharing and/or storing the PII of Plaintiff and Class members on its computer systems.

112.    Plaintiff and Class members were the foreseeable and probable victims of such inadequate security practices and procedures, and Defendant knew or should have known of the inherent risks in collecting and storing the PII of Plaintiff and Class members, the critical importance of providing adequate security

---

[16] *See supra* ¶ 36.

of that data, and the necessity for encrypting all data stored on Defendant's systems.

113.    Defendant's own conduct created a foreseeable risk of harm to Plaintiff and Class members.  Defendant's misconduct included, but was not limited to, its failure to take the adequate or necessary steps and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included its decisions not to comply with state and federal law or industry standards for the safekeeping of the PII of the Plaintiff and other Class members, including basic encryption techniques freely available to Defendant.

114.    Plaintiff and other Class members had no ability to protect their PII that was in, and probably remains in, Defendant's possession.

115.    Defendant, on the other hand, was able to protect against the Data Breach and the harm suffered by Plaintiff and Class members as a result of the Breach, but failed to do so as a result of its neglect and failure to take adequate or necessary measures to safeguard and maintain the confidentiality of the PII of the Plaintiff and other Class members.

116.    Defendant had and continues to have duties to adequately disclose that the PII of Plaintiff and Class members within Defendant's possession, custody or control that was actually or potentially compromised, how it was compromised, and precisely the types of data that were compromised and when.  Such notice was necessary to allow Plaintiff and Class members to take steps to prevent, mitigate, and

repair any identity theft and the fraudulent use of their PII by third parties.

117.    Defendant had and still has duties to comply with the laws and industry standards set out above.

118.    Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and Class members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and other Class members' PII within Defendant's possession.

119.    Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and Class members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiff's and Class members' PII.

120.    Defendant, through its actions and/or omissions, unlawfully breached its duties to timely disclose to Plaintiff and Class members that the PII within Defendant's possession might have been compromised and precisely the type of information compromised.

121.    Defendant's breaches of its duties owed to Plaintiff and Class members caused Plaintiff's and Class members' PII to be compromised.

122.    Defendant breached its duties, pursuant to the FTC Act, and other applicable standards, and thus was negligent, by failing to use reasonable measures to protect Plaintiff's and Class members' PII. The specific negligent acts and omissions committed by Avis include, but are not limited to, the following:

a.   Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and Class members' PII;

b.   Failing to adequately monitor the security of its networks and systems;

c.   Failing to audit, monitor, or ensure the integrity of its data security practices;

d.   Allowing unauthorized access to Plaintiff's and Class members' PII;

e.   Failing to detect in a timely manner that Plaintiff's and Class members' PII had been compromised;

f.   Failing to remove former customers' PII they was no longer required to retain pursuant to regulations; and

g.   Failing to timely and adequately notify Plaintiff and Class members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

123.   Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein.   Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

124.   Plaintiff and Class members were within the class of persons the FTC Act is intended to protect and the type of harm that resulted from the Data Breach was the type of harm these statues were intended to guard against.

125.    Defendant's violation of Section 5 of the FTC Act constitutes negligence.

126.    The FTC has pursued enforcement actions against businesses like Defendant's, which, as a result of its failure to employ reasonable data security measures and avoid unfair and deceptive practices, have caused the same harm as that suffered by Plaintiff and the Class as a result of Defendant's actions and omissions here in connection with the Data Breach.

127.    As a result of Defendant's prior and ongoing failures to notify Plaintiff and Class members regarding the type of PII that has been compromised, Plaintiff and Class members are unable to take the necessary precautions to mitigate damages by preventing future fraud.

128.    Defendant's breaches of its duties caused Plaintiff and Class members to suffer from identity theft, fraud, loss of time and money to monitor their finances for fraud, loss of access to their money and financial accounts, and loss of control over their PII, and the significant additional distress and anxiety that is inevitably associated with these difficult and stressful circumstances.

129.    As a result of Defendant's negligence and breach of duties, Plaintiff and Class members are in danger of present and continuing harm in that their PII, which is still in the possession of third parties, will be used for fraudulent purposes. Plaintiff and Class members will need identity theft protection services and credit

monitoring services for their respective lifetimes (well beyond one year), considering the immutable nature of the PII at issue, which Avis has admitted includes the names and Social Security numbers of Plaintiff and other Class members.

130.   There is a close causal connection between Defendant's failure to implement sufficient security measures to protect the PII of Plaintiff and Class members and the harm, or risk of imminent harm, experienced by Plaintiff and other Class members. The PII of Plaintiff and other Class members was stolen and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII, by adopting, implementing, and maintaining appropriate security measures.

131.   Plaintiff seeks the award of actual damages on behalf of himself and the Class.

132.   In failing to secure Plaintiff's and Class members' PII and failing to promptly or adequately notify them of the Data Breach, Defendant is also guilty of oppression, fraud, and/or malice, in that Defendant acted or failed to act with a willful and conscious disregard of Plaintiff's and other Class members' rights. Plaintiff, therefore, in addition to seeking actual damages, seeks punitive damages on behalf of himself and the Class.

133.   Plaintiff also seeks injunctive relief on behalf of the Class in the form of an order compelling Defendant to institute appropriate data collection and

safeguarding methods and policies regarding customer information.

## SECOND CAUSE OF ACTION

### Negligence *per se*
### (On Behalf of Plaintiff and the Class)

134.   Plaintiff incorporates by reference all previous allegations as though fully set forth herein.

135.   Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by companies like Defendant of failing to use adequate or reasonable measures to protect PII.

136.   The FTC publications and orders also form the basis of Defendant's duties to the Class.

137.    Defendant violated Section 5 of the FTC Act (and other similar state privacy statutes requiring businesses collecting or maintaining customer personal information to implement and maintain reasonable security measures appropriate to the nature of the information to protect it from unauthorized access, use, or disclosure) by failing to use reasonable measures to protect PII, and by not complying with industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of PII that it obtained and stored and the foreseeable consequences of a data breach of that data.

138.   Defendant's violation of Section 5 of the FTC Act, similar state statutes

and/or industry standards constitutes negligence *per se*.

139.   The Plaintiff and other Class members are consumers within the class of persons Section 5 of the FTC Act was intended to protect.

140.  Moreover, the harm that has occurred is the type of harm the FTC Act and other similar state regulations were intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses that, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and the Class.

141. As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and other Class members have been injured as described herein, and are entitled to damages, including compensatory, punitive, and nominal damages, in amounts to be proven at trial.

## **THIRD CAUSE OF ACTION**
### **Unjust Enrichment**
### **(On Behalf of Plaintiff and the Class)**

142. Plaintiff incorporates by reference all previous allegations as though fully set forth herein.

143.   Plaintiff and other Class members conferred monetary benefits to Avis by paying it, and entrusting money to it, for various services relating to its business operations.

144.  Defendant knew that Plaintiff and other Class members conferred

monetary benefits to it by entering into business relationships with it. Defendant acknowledged and retained these benefits when it accepted the terms of these relationships with the Plaintiff and other Class members.

145.  Defendant was supposed to, but failed to, use a portion of the monetary benefits provided from Plaintiff and other Class members to secure the PII belonging to them by paying for costs of reasonable and adequate data management and security.

146.  Defendant should not be permitted to retain any of the monetary benefits it received as a result of its failure to implement adequate and necessary security measures to protect the safety and confidentiality PII of Plaintiff and other Class members.

147.  Defendant gained access to Plaintiff's and other Class members' PII through unfair, deceptive and inequitable means because Defendant failed to disclose that it used inadequate and unreasonable security measures.

148.  Plaintiff and other Class members were unaware of the unreasonable and inadequate security measures and would not have provided their PII to Defendant had they known of these unreasonable and inadequate security measures.

149.  To the extent that this cause of action is pleaded in the alternative to the others, Plaintiff and the Class members have no adequate remedy at law.

150.  As a direct and proximate result of Defendant's conduct, Plaintiff

and the other Class members have suffered and will suffer injury, including but not limited to: **(i)** actual identity theft; **(ii)** the loss of the opportunity to control how their PII is used; **(iii)** the compromise and/or theft of their PII; **(iv)** out-of-pocket expenses associated with travel expenses and the significant efforts necessary prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; **(v)** lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; **(vi)** costs associated with placing freezes on credit reports; **(vii)** the ongoing and continued risk to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII of Plaintiff and Class members; **(viii)** loss of access to their money and financial accounts; and **(ix)** future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and other Class members.

151. As a direct and proximate result of Defendant's conduct, Plaintiff and other Class members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, significant anxiety, emotional

distress, loss of privacy, and other economic and non-economic losses.

152.  Avis should be compelled to disgorge into a common fund or constructive trust, for the benefit of the Plaintiff and other Class members, all proceeds from the monetary benefits that it unjustly received from them.

## FOURTH CAUSE OF ACTION
### Breach of Implied Contract
### (On Behalf of Plaintiff and the Class)

153.  Plaintiff incorporates by reference all previous allegations as though fully set forth herein.

154.  Plaintiff and the Class, encompassing clients, customers, business relations, and claimants of the Defendant, delivered their PII to Defendant as part of the process of engaging in certain business and related transactions.

155.  Upon providing their PII in exchange for professional or other goods and/or services, or other transactions, Plaintiff and other Class members entered into implied contracts with Defendant under which Defendant agreed to safeguard and protect such information and also to promptly, timely, accurately and thoroughly notify Plaintiff and other Class members that their PII had been breached and compromised.

156.  Each such contractual relationship imposed on Defendant an implied covenant of good faith and fair dealing by which Defendant was required to perform its obligations and manage Plaintiff's and other Class member's data in

ways comporting with the reasonable expectations of security, privacy, confidentiality and protection attendant to entrusting such sensitive and valuable data to the Defendant.

157.    In providing their PII, Plaintiff and other Class members entered into an implied contract with Defendant whereby the latter, in receiving such data, became obligated to reasonably and adequately safeguard Plaintiff's and the other Class members' PII.

158.    In delivering their PII to Defendant, Plaintiff and other Class members intended and understood that Defendant would take reasonable and adequate steps to safeguard that data.

159.    Plaintiff and the Class members would not have entrusted their PII to Defendant in the absence of such an implied contract.

160.    Defendant accepted possession of Plaintiff's and other Class members' personal data for the purpose of providing certain goods and services to Plaintiff and the Class members, from which Defendant derived substantial profits.

161.    Had Defendant disclosed to Plaintiff and Class members that it did not have adequate computer systems and security practices to secure PII, Plaintiff and the other members of the Class would not have provided their PII to Defendant.

162.    Defendant recognized that the PII at issue is highly sensitive and valuable and must be adequately protected, and that such protection was of material

importance as part of its bargain with Plaintiff and other Class members.

163.   Plaintiff and the other Class members fully performed their obligations under the implied contracts with Defendant.

164.   Defendant breached the implied contracts with Plaintiff and the other Class members by failing to take reasonable and adequate measures to safeguard their data.

165.   Defendant breached the implied contract with Plaintiff and other Class members by failing to promptly, adequately or thoroughly notify them of the unlawful and unauthorized access to and acquisition of their sensitive and valuable PII.

166.   As a direct and proximate result of the breach of the contractual duties Plaintiff and other Class members have suffered actual, concrete, and imminent injuries. The injuries suffered by Plaintiff and the other Class members include: **(a)** the invasion of privacy; **(b)** the compromise, disclosure, theft, and unauthorized use of Plaintiff's and Class members' PII; **(c)** economic costs associated with the time spent to detect and prevent identity theft, including loss of productivity; **(d)** monetary costs associated with the detection and prevention of identity theft; **(e)** economic costs, including time and money, related to incidents of actual identity theft; **(f)** the emotional distress, fear, anxiety, nuisance and annoyance of dealing related to the theft and compromise of their PII; **(g)** the diminution in the value of the services bargained for as Plaintiff and Class members were deprived of the data protection

and security that Defendant promised when Plaintiff and the other Class members entrusted Defendant with their PII; **(h)** loss of access to their accounts; and **(i)** the continued and substantial risk to Plaintiff's and Class members' PII, which upon information and belief has not only been improperly compromised and disclosed and distributed to unauthorized third parties, but remains in the Defendant's possession and subject to inadequate safety, security and protection measures.

<u>**FIFTH CAUSE OF ACTION**</u>

**Declaratory Judgment**
**(On Behalf of Plaintiff and the Class)**

170.    Plaintiff restates and realleges all preceding allegations set forth above as if fully alleged herein.

171.    Under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et. seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant necessary relief. Under the Declaratory Judgment Act the Court has broad authority to restrain tortious acts, such as here, that violate the terms of the federal and state laws described in this Complaint.

172.    An actual controversy exists as a result of the Data Breach at issue herein in which Plaintiff's and other Class members' PII has been compromised, and whether Defendant currently maintains data security measures adequate to protect Plaintiff's and other Class members' PII from further such breaches. Plaintiff alleges that Defendant's data security measures remain inadequate.

Additionally, Plaintiff and other Class members continues to suffer injury as a result of the compromise their PII and remains at imminent risk that further compromises of their PII will occur in the future.

173.    Pursuant to its authority under the Declaratory Judgment Act, the Court should enter a judgment declaring that, among other things:

> a. Defendant owed legal duties to secure customers' PII under the common law, Section 5 of the FTC Act, and state data security laws; and

> b. Defendant breached and continue to breach its legal duties by failing to employ reasonable measures to secure customers' PII.

174.    This Court also should issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with law and industry standards to protect Class members' PII.

175.    If an injunction is not issued, Plaintiff and other Class members will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Avis.  The risk of another such breach is real, immediate, and substantial. If another breach at Avis occurs, Plaintiff and other Class members will not have an adequate remedy at law because many of the resulting injuries are not readily quantified, and Class members will be forced to bring multiple lawsuits to rectify the same conduct.

176.    The hardship to Plaintiff and the other Class members if an injunction

is not issued exceeds the hardship to Defendant if an injunction is issued. Plaintiff will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has pre-existing legal obligations to employ such measures.

177.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another such data breach that compromises the valuable confidential PII.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and other Class members, requests judgment against Defendant and that the Court grant the following:

A. For an Order certifying the Class, and appointing Plaintiff and his counsel to represent the Class;

B. For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the PII of Plaintiff and other Class members;

C. For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff, other Class members, and the public at large including but not limited to an order:

    i.    prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

ii.    requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and state or local laws;

iii.   requiring Defendant to delete, destroy, and purge the PII of Plaintiff, other Class members, and all members of the public whose PII Defendant retains or may retain in the future unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff, other Class members, and the public at large;

iv.   requiring Defendant to provide out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of its PII for Plaintiff's and other Class members' respective lifetimes;

v.    requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PII of Plaintiff, other Class members, and any member of the public at large whose PII Defendant possesses, or may come to possess, in the future;

vi.   prohibiting Defendant from maintaining the PII of Plaintiff, other Class members, and any member of the public at large whose PII Defendant possesses, or may come to possess, in the future on a cloud-based database;

vii.  requiring Defendant to engage independent third-party security auditors/penetration testers as well

as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

viii.    requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

ix.    requiring Defendant to audit, test, and train security personnel regarding any new or modified procedures;

x.    requiring Defendant to segment data by, among other things, creating firewalls and controls so that if one area of Defendant's networks are compromised, hackers cannot gain access to portions of Defendant's systems;

xi.    requiring Defendant to conduct regular database scanning and securing checks;

xii.    requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff, other Class members, and any member of the public at large whose PII Defendant possesses, or may come to possess, in the future;

xiii.    requiring Defendant to routinely and continually conduct internal training and education, and on

an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiv.    requiring Defendant to implement a system of tests to assess employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xv.     requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xvi.    requiring Defendant to meaningfully educate all Class members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

xvii.   requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and counsel for the class, and to report any deficiencies with such compliance;

D. For an award of damages, including actual, nominal, statutory, treble, consequential, and punitive damages, as allowed by law in an amount to be determined;

E. For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F. For prejudgment interest on all amounts awarded; and

G. Such other and further relief as this Court may deem just and proper

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands that this matter be tried before a jury.

DATED this 3rd day of October, 2024

Respectfully submitted,

**LAUKAITIS LAW LLC**

By: */s/ Kevin Laukaitis*

Kevin Laukaitis, Esq.
(N.J. Id: #155742022)
954 Avenida Ponce De León
Suite 205, #10518
San Juan, Puerto Rico 00907
Email:  klaukaitis@laukaitislaw.com

**BRONSON LEGAL LLC**
Kent A. Bronson, Esq.
(*p.h.v. application  forthcoming*)
1216 Broadway, 2nd Floor
New York, NY 10001
Telephone: (212) 594-5300
Facsimile: (212) 868-1229
Email:  kbronson@bronsonlegalllc.com

***Attorneys for Plaintiff Robert Thomas
and the Proposed Class***